**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARLOS MANUEL TORRES-COLON | : | |
| | : | |
| Appellant | : | No. 2510 EDA 2023 |

Appeal from the Judgment of Sentence Entered August 18, 2023
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0002308-2022

BEFORE:   LAZARUS, P.J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED OCTOBER 24, 2024**

Appellant Carlos Manuel Torres-Colon appeals from the judgment of sentence imposed following his jury trial convictions for receiving stolen property and unauthorized use of a motor vehicle.[1]  Appellant's counsel (Counsel) has filed a petition to withdraw and an ***Anders***/***Santiago***[2] brief. After review, we grant Counsel's petition to withdraw and affirm the judgment of sentence.

The trial court summarized the factual and procedural history of this case as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3925(a) and 3928(a), respectively.

[2] ***Anders v. California***, 386 U.S. 738 (1967); ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).

Amanda Schwarcz, the victim in this case, owned a 2010 Mazda 5 with roughly 121,000 miles on it in early March [of] 2022. On March 10, 2022, the Mazda was in the possession of Samuel Vega, Schwarcz's brother, to whom she had granted permission to use the vehicle. Vega was included as a driver on Schwarcz's insurance policy.

Vega owned a salon known as The Color Lab at 735 North 19th Street, Allentown, Lehigh County, Pennsylvania. Vega knew Appellant because they grew up in the same neighborhood and Appellant had dated one of Vega's cousins. Vega testified he offered Appellant a job to help him clean the salon. Appellant worked one day at Vega's salon assisting with cleaning tasks.

Vega testified that on March 10, 2022, he was working at the salon. Vega's brother, Edwin Vega, and Appellant had stopped by the salon at some point early in the day. A conversation occurred between Vega and his brother about his brother cleaning the Mazda. Vega told his brother that it would have to be cleaned in the parking lot because he would not let anyone else drive it because it belonged to Schwarcz. Vega denied ever authorizing Appellant to use the car at any time.

Vega left the salon for a break and returned for a 4:00 p.m. appointment. He parked the Mazda in the rear of the salon. The vehicle was parked near a sign prohibiting parking except for patrons of the salon. Vega's final customer of the day was a friend with whom he was catching up, so after he finished working on the customer, the two walked to a bar located around the corner from the salon. Vega consumed some alcoholic beverages and left the bar. Vega was concerned about drinking and driving, so he walked back to the salon and laid down on a futon he had in the business' basement. Vega testified he had his keyring with several keys, including the key to the Mazda, sitting on the desk in the salon.

On cross-examination, counsel questioned whether [] Vega was drinking with Appellant at the bar. [] Vega denied giving Appellant the key to the Mazda in order to drive himself home. [] Vega also denied admonishing Appellant to make sure nothing happened to the vehicle. He reiterated on re-direct that he did not give Appellant permission to use the vehicle.

At approximately 3:30 a.m. on March 11, 2022, an unrelated third party named Yadiree Ramos was driving home from work. Upon arriving at her home in the area of South Dauphin and Cumberland

Streets, Ms. Ramos observed there was a vehicle that had been involved in an accident near her home. She saw a person whom she identified in court as Appellant getting out of the car that was in the accident. After getting out of the Mazda, Appellant approached Ms. Ramos while she was still seated in her vehicle and asked her, in English, "[n]ot to call the police because the car was not his, it was stolen." She [] told Appellant she did not speak English, so he repeated the same thing in Spanish.

Between 3:30 a.m. and 4:00 a.m. on March 11, 2022, Officer Manar Makhoul of the City of Allentown Police Department was dispatched to the scene of a motor vehicle accident in the area of South Dauphin and East Cumberland Streets, Allentown, Lehigh County, Pennsylvania. Officer Makhoul responded and observed a black Mazda with moderate damage to the front and side. The vehicle traveled through several grassy areas and some residential areas before striking another vehicle. Its airbag had been deployed. Officer Makhoul spoke with witnesses at the scene and learned that the driver of the vehicle fled the scene.

While Officer Makhoul was on the scene, one of the neighbors transported Appellant back to the scene after having picked him up a few blocks away. Officer Makhoul observed that Appellant showed signs of impairment. Appellant had blood-shot glassy eyes, slurred speech, and an odor of alcohol emanating from him. Appellant had a scratch on the right side of his face. Appellant denied he was driving the vehicle. He told Officer Makhoul that the vehicle belonged to a friend of his.

At approximately 9:30 or 10:00 a.m. on March 11, 2022, Vega woke up and noticed the vehicle was missing. He called Schwarcz and asked whether she came overnight and took the vehicle. Schwarcz denied taking it, so she followed up by contacting her employer, A-1 Towing, a local towing company, to see if it had been towed due to being parked near the private property sign. The A-1 operator confirmed that the vehicle had, in fact, been towed, but not from 735 North 19th Street. It was towed from the south side of Allentown, and there was a hold placed on it by the Allentown Police Department.

Schwarcz picked Vega up at the salon and they went to the location of the accident on Cumberland Street. After visiting the scene, Schwarcz and Vega went to the autobody lot to which the Mazda was towed and observed it had been severely damaged.

Detective Lindsey Yetter of the Whitehall Township Police Department testified at trial. Detective Yetter is a member of the Lehigh County Auto Theft Task Force. She processed the Mazda after it was recovered following the crash. Detective Yetter testified that the Mazda's dome light or map light had been removed. She testified that when she inspected the vehicle, the light was on the floor underneath flowers that had been sitting on the seat of the vehicle. She explained this was significant because it suggested the map light had been removed and placed on the floor prior to the crash. She explained that had the crash caused the light to become dislodged, the light likely would have been located on top of the flowers, not underneath them.

The Mazda's GPS unit was located behind the map light. Detective Yetter testified the unit had been intentionally disconnected. Detective Yetter indicated that based on her experience, the position in which she found the GPS would not have resulted from the crash.

\* \* \*

Appellant was arrested and charged with one count of receiving stolen property, graded as a felony of the third degree, and unauthorized use of a motor vehicle, graded as a misdemeanor of the second degree.

A jury trial was conducted on June 5, 2023, and June 6, 2023. At the close of trial, the jury convicted Appellant on both counts of the criminal information. On August 18, 2023, Appellant was sentenced to a period of not less than three (3) nor more than seven (7) years in a state correctional institution.

Appellant filed a post-sentence motion for judgment of acquittal based on sufficiency of the evidence on August 28, 2023. The [trial court] denied that motion on August 30, 2023.

Appellant filed a [timely] notice of appeal on September 28, 2023. The [trial court] entered an order directing him to file a concise statement pursuant to Pa.R.A.P. 1925(b) on October 2, 2023.

Trial Ct. Op., 12/4/23, at 2-7 (citations and footnotes omitted and some formatting altered). The trial court subsequently issued an opinion addressing Appellant's claim.

Counsel has identified the following issue in the **Anders**/**Santiago** brief:

Whether counsel should be granted permission to withdraw where [A]ppellant's issues challenging the sufficiency of the evidence after being convicted by a jury are frivolous?

**Anders**/**Santiago** Brief at 5.

"When faced with a purported **Anders**[/**Santiago**] brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw." **Commonwealth v. Wimbush**, 951 A.2d 379, 382 (Pa. Super. 2008) (citation omitted). Counsel must comply with the technical requirements for petitioning to withdraw by (1) filing a petition for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) providing a copy of the brief to the appellant; and (3) advising the appellant of the right to retain private counsel, proceed *pro se*, or raise additional arguments that the appellant considers worthy of the court's attention. **See Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). In an **Anders**/**Santiago** brief, counsel must set forth the issues that the defendant wishes to raise and any other claims necessary to effectuate appellate presentation of those issues. **Commonwealth v. Millisock**, 873 A.2d 748, 751 (Pa. Super. 2005).

Additionally, counsel must file a brief that meets the requirements established in **Santiago**, namely:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that

- 5 -

counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

"Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Goodwin*, 928 A.2d at 291 (citation omitted). This includes "an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citation and footnote omitted); *accord Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

Here, Counsel has complied with the procedural requirements for seeking withdrawal by filing a petition to withdraw, sending Appellant a letter explaining his appellate rights, informing Appellant of his right to proceed *pro se* or with private counsel, and supplying Appellant with a copy of the *Anders*/*Santiago* brief. *See Goodwin*, 928 A.2d at 290. Counsel also provided this Court with a copy of his letter to Appellant informing him of his rights. Moreover, Counsel's *Anders*/*Santiago* brief complies with the requirements of *Santiago*. Counsel includes a summary of the relevant factual and procedural history, refers to the portions of the record that could

arguably support Appellant's claim, and sets forth the conclusion that the appeal is frivolous. ***See Santiago***, 978 A.2d at 361. Accordingly, we conclude that Counsel has met the technical requirements of ***Anders*** and ***Santiago***, and we will proceed to address the issue presented in Counsel's ***Anders***/***Santiago*** brief.

The sole issue identified by Counsel is that the evidence was insufficient to sustain Appellant's conviction for receiving stolen property. Specifically, Counsel refers to Appellant's post-sentence motion, in which Appellant argued that the Commonwealth failed to establish that he acted with the intent to deprive the owner of the vehicle or that he lacked permission from the "person who was the apparent owner of the vehicle, even though that person was not the owner [whose name] appeared on the title of the vehicle." ***See*** Post-Sentence Mot., 8/28/23, at 2 (unpaginated).[3]

When reviewing a challenge to the sufficiency of the evidence, we are governed by the following standard:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the

---

[3] Appellant did not challenge his conviction for unauthorized use of a motor vehicle in his post-sentence motion.

verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

In applying the above test, we may not [re]weigh the evidence and substitute our judgment for the fact-finder.

*Commonwealth v. James*, 297 A.3d 755, 764 (Pa. Super. 2023) (citations omitted and formatting altered), *appeal denied*, 309 A.3d 691 (Pa. 2023).

The Crimes Code defines receiving stolen property as follows: "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S. § 3925(a). "Receives" is defined, in relevant part, as acquiring possession or control of the property. 18 Pa.C.S. § 3925(b). To sustain a conviction for receiving stolen property when the property at issue is a vehicle, the Commonwealth must prove beyond a reasonable doubt that the vehicle was stolen, that the defendant had possession of the vehicle, and that the defendant knew or had reason to know that the vehicle was stolen. *Commonwealth v. Carson*, 592 A.2d 1318, 1321 (Pa. Super. 1991).

Here, the trial record reflects that Amanda Schwarcz testified that she owned the vehicle in question, which was a 2010 Mazda 5 with approximately 121,000 miles. N.T. Trial, 6/5/23, at 57. On March 10, 2022, Ms. Schwarcz lent the Mazda to her brother, Samuel Vega. *Id.* Mr. Vega is listed as an authorized driver on Ms. Schwarcz's insurance policy for the Mazda. *Id.* Ms. Schwarcz testified that she knows Appellant, because he is a former boyfriend

of her cousin. *Id.* at 66. Appellant does not dispute that Ms. Schwarcz, the titled owner, did not authorize him to drive the Mazda, but contends that Mr. Vega gave him permission to drive the car after leaving the bar in the early morning on March 11, 2022. *Id.* at 65-66; *see also*, Trial Ct. Op. at 9-10. However, Mr. Vega testified at trial that he did not give Appellant permission to drive the Mazda. N.T. Trial, 6/5/23, at 86-87, 101-02, 106-07.

Further, an independent witness, Yadiree Ramos testified to the jury that in the early morning hours of March 11, 2022, she observed a car that had been in an accident outside of her home. *Id.* at 128. She stated that she saw Appellant exit the vehicle that was involved in the accident. *Id.* As he exited the vehicle, Appellant implored Ms. Ramos to not call the police because "the car was not his. It was stolen." *Id.* at 129, 132. Appellant first said this in English, and when Ms. Ramos told him that she did not understand English, he repeated his statement in Spanish. *Id.* at 135. Desire Mejia, another witness for the Commonwealth, identified the vehicle in question as a Mazda. *Id.* at 138. Ms. Mejia observed Appellant at the scene of the accident and told him that she was going to call the police. *Id.* at 138-39. Appellant also asked Ms. Mejia not to call the police because the car was stolen. *Id.* at 139.

Finally, Detective Lindsey Yetter of the Lehigh County Auto Theft Task Force testified that he inspected Ms. Schwarcz's vehicle upon receiving a report that it was stolen. N.T. Trial, 6/6/23, at 9-10. Detective Yetter testified that the dome light inside the vehicle was removed, which she stated was common in vehicle theft cases. *Id.* at 11-12. Detective Yetter further

explained that in vehicle theft cases, the dome light is commonly removed in order to either conceal the passenger compartment of the vehicle in darkness or to remove the GPS tracking device, which is usually installed near the dome light. *Id.* at 13. In Ms. Schwarcz's Mazda, that device would have been installed in the dome light. *Id.* Detective Yetter further explained that the GPS tracking device was not broken; rather, it was removed. *Id.* at 14.

Viewing this trial evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that the Commonwealth has met its burden of proof in establishing Appellant's guilt of receiving stolen property beyond a reasonable doubt. *See James*, 297 A.3d at 764; *Carson*, 592 A.2d at 1321. The evidence reflects that Appellant had possession of Ms. Schwarcz's Mazda and knew that it was stolen. *See Carson*, 592 A.2d at 1321.

For these reasons, we agree with Counsel's assessment that the claim presented in the *Anders*/*Santiago* brief is frivolous. Further, our independent review of the record does not reveal any additional, non-frivolous issues. *See Flowers*, 113 A.3d at 1250; *see also Goodwin*, 928 A.2d at 291. For these reasons, we grant Counsel's petition to withdraw and affirm the judgment of sentence.

Judgment of sentence affirmed. Counsel's petition to withdraw granted. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/24/2024